UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TACHICA M. CALLAHAN *et al.*,
    *Plaintiffs*,

v.

CITY OF NEW HAVEN *et al.*,
    *Defendants*.

No. 3:21-cv-1069 (JAM)

## ORDER GRANTING MOTION TO DISMISS

Plaintiff Tachica Callahan has filed this *pro se* lawsuit against the City of New Haven, the New Haven Police Department, and several law enforcement officers. She raises an assortment of civil rights claims against the defendants that arise from a 2016 arrest and a 2018 search of her home by the New Haven police. The defendants have moved to dismiss her claims. I will grant their motion primarily on the ground that Callahan has failed to allege facts that give rise to plausible grounds for relief.

### BACKGROUND

Callahan has filed many lawsuits against New Haven and its officials over the years.[1] The saga continues in this most recent action where she sues eight defendants: the City of New Haven, the New Haven Police Department, the New Haven Police Task Force, and five law enforcement officers, including former Chief of Police Anthony Campbell, Captain Julie Johnson, Lieutenant Racheal Cain, Officer Eric Eisenhard, and Special Agent Sean Gordon.[2]

---

[1] *See Callahan v. Hum. Res.*, 2022 WL 16797318 (D. Conn. 2022) (dismissing Callahan's employment claims against New Haven and its officials); *Callahan v. Hum. Res.* (*Callahan I*), 2022 WL 445819 (D. Conn. 2022) (dismissing claims that New Haven violated Callahan's free speech rights); *Callahan v. City of New Haven Dep't of Hum. Res.*, 2021 WL 2206565 (D. Conn. 2021) (dismissing Callahan's claims that New Haven and certain officials discriminated against her and retaliated against her in violation of civil rights laws); *Callahan v. City of New Haven Bd. of Educ.*, 2019 WL 6918516 (D. Conn. 2019) (granting summary judgment for New Haven's Board of Education on Callahan's claims that the board discriminated against her); *see also Callahan v. Gateway Cmty. Coll.*, 2019 WL 1052177 (D. Conn. 2019) (dismissing employment discrimination and retaliation claims against Gateway Community College).
[2] Doc. #6 at 1.

1

I take the facts as stated in Callahan's amended complaint as true for the purpose of this ruling. Callahan's pleading is disorganized and difficult to follow, but she clarified during oral argument on defendants' motion to dismiss that her civil rights claims are based on two separate incidents involving New Haven law enforcement.[3]

For the first incident, Callahan alleges a false arrest.[4] She asserts that Officer Eisenhard purposefully lied in an arrest warrant application when he stated that Callahan called another woman, Janay McCrea, a "fat Miss Piggy" during a "neighborhood dispute."[5]

Callahan fails to plead the dates for either this purported interaction with McCrea or her corresponding arrest, but several documents that she filed as exhibits in a separate lawsuit before this Court specifically reference this incident.[6] Those documents include the affidavit detailing the probable cause to arrest Callahan, the formal complaint that she submitted to the New Haven Police Department about the arrest and Officer Eisenhard, and the Long Form Information signed by the Deputy Assistant State's Attorney charging Callahan.[7] I take judicial notice of these exhibits because they are documents that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" that Callahan herself submitted to this Court albeit in a separate lawsuit. Fed. R. Evid. 201(b)(2); *see, e.g.*, *Bailey v. Interbay Funding, LLC*, 2018 WL 1660553, at *2 & n.2 (D. Conn. 2018); *see also Tonina v. Ferraro*, 2022 WL

---

[3] *See id.* at 2–4 (¶¶ 1–12, 18–23), 8 (¶¶ 73–77).
[4] *Id.* at 4–6 (¶¶ 18–41).
[5] *Ibid.*
[6] *See* Exs. at 15–18 (Civilian Complaint Form), 37–41 (Application for Arrest Warrant), 60–63 (Long Form Information), to Mem. in Opp'n to Mot. for Summ. J., *Callahan v. Hum. Res., et al.*, No. 3:18-cv-488 (D. Conn.), Doc. #56-4 (filed Nov. 17, 2020). I did not address Callahan's claims centering on alleged police misconduct in *Callahan I* because they were undeveloped and unrelated to the crux of her discrimination claims. *See* 2022 WL 445819, at *1 & n.5 ("But her complaint does not specify the date of any such complaints about the police or any grounds to conclude that these complaints have anything to do with the failure to hire her for positions not related to the police department.").
[7] *See* Exs. at 15–18, 37–41, 60–63, to Mem. in Opp'n to Mot. for Summ. J., *Callahan v. Hum. Res., et al.*, No. 3:18-cv-488, Doc. #56-4.

168782, at *1 (D. Conn. 2022) (taking judicial notice of a complaint that the plaintiff had filed in a separate lawsuit).

According to the affidavit, on March 21, 2016, Officer Eisenhard was dispatched with a fellow police officer to a breach-of-peace complaint on Ellsworth Avenue in New Haven.[8] Once he arrived, he met with McCrea who told him that Callahan "was yelling and screaming at her" and told her at one point to "get [her] fucking piggy ass out of the way."[9] McCrea informed Officer Eisenhard that she had a protective order against Callahan.[10] McCrea had tried to ignore Callahan, but she continued to berate McCrea in the street.[11] Callahan eventually finished her tirade and left, prompting McCrea to call the police.[12]

Officer Eisenhard confirmed that McCrea had a protective order with the records section of the police department, and he noted in his affidavit that the order contained "a strict no contact rule."[13] He concluded that probable cause existed to believe that Callahan had broken the law and signed the affidavit on March 28, 2016.[14] A judge agreed and signed the warrant the following day.[15]

Callahan's amended complaint foregoes many of these details and only generally alleges an altercation with McCrea.[16] The crux of her false arrest claim though is that Officer Eisenhard lied about the specific insult hurled at McCrea.[17] She is adamant that she never called McCrea a

---

[8] *Id.* at 37 (¶ 2).
[9] *Ibid.* (¶ 3).
[10] *Ibid.*
[11] *Ibid.*
[12] *Ibid.*
[13] *Ibid.* (¶ 4).
[14] *See ibid.* (¶¶ 4–6). Officer Eisenhard bases his Application for Arrest Warrant on a violation of Conn. Gen. Stat. § 53a-223 (Criminal violation of a protective order). *Ibid.* (¶ 6).
[15] *Ibid.*
[16] Doc. #6 at 4 (¶¶ 18–21).
[17] *See id.* at 5 (¶¶ 33–34, 37–38).

"fat Miss Piggy."[18] And Callahan is incredulous that such a comment—even a derogatory one—could serve as a legitimate predicate for an arrest.[19]

Callahan's second claim stems from police officers' search of her New Haven home on February 6, 2018.[20] The officers stormed her home in tactical gear that evening in search of someone who they believed was hiding there in order to avoid arrest.[21] But this is nonsense according to Callahan.[22] She claims that officers raided her home as retaliation for her many lawsuits against New Haven and its officials.[23] During the search, the officers threw smoke bombs, damaged her property, threatened her children, and "pointed a gun in [her] face."[24] Callahan made it clear to the Court at oral argument that she was not arrested that evening.[25] The amended complaint does not identify by name any of the officers who took part in this entry into her home.

Callahan's remaining allegations are a scattershot of disjointed and opaque legal claims against the New Haven Police Department, its officers, and various state prosecutors and judges.[26] Her amended complaint includes vast swaths of copy-and-pasted material only tangentially related to the facts she has plead.[27] In the introduction, she asserts several employment-related and generalized constitutional claims alleging various forms of discrimination, harassment, and retaliation.[28] But, as the defendants point out, she "makes no

---

[18] *See ibid.* (¶¶ 33, 38).
[19] *See id.* at 4 (¶ 22).
[20] *Id.* at 2–4 (¶¶ 1–12), 8 (¶¶ 73–77). Callahan briefly referenced this police raid in one of her other lawsuits. *See* Am. Compl. at 14, *Callahan v. Hum. Res., et al.*, No. 3:20-cv-1881 (D. Conn.), Doc. #42 (filed Mar. 18, 2022). She stated that in "February 2018 the City of New Haven and its [New Haven Police Department] Task Force illegally entered my dwelling space and violated the constitutional rights of my children." *Ibid.*
[21] *See* Doc. #6 at 3 (¶¶ 4, 7–8).
[22] *See ibid.* (¶¶ 4, 8).
[23] *See ibid.*
[24] *Id.* at 2–4 (¶¶ 2, 5–6, 10, 12).
[25] *See id.* at 4 (¶ 13).
[26] *See id.* at 4–8 (¶¶ 13–78).
[27] *See id.* at 8–18.
[28] *See id.* at 1–2 (citing, for example, Title VII, 42 U.S.C. § 1981, and the Connecticut Fair Employment Practices

allegations, assertions, or recitations that she is or was an employee of the City of New Haven."[29] To be sure, Callahan has filed several lawsuits with respect to her city employment that claim discrimination and retaliation.[30] But based on the factual nature of Callahan's allegations and her representations to the Court at oral argument I will construe her amended complaint to assert civil rights claims only against the police-related defendants named in the case caption.[31]

Callahan seeks declaratory, injunctive, and equitable relief as well as money damages.[32] The defendants have moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[33] They argue that the statute of limitations bars Callahan's claims and, even if it did not, she fails to state a claim upon which relief can be granted.[34]

## DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[35] A *pro se* complaint must be construed liberally but still must plead enough facts to state a plausible claim for relief. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*).

---

Act).
[29] Doc. #22 at 7.
[30] *See supra* note 1.
[31] *See* Doc. #6 at 1–8.
[32] *Id.* at 1–2, 18–19 (Prayer for Relief).
[33] Doc. #22.
[34] *Id.* at 6–15.
[35] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

*Additional plaintiffs*

Callahan asserts legal claims not only on her own behalf but also on behalf of three other individuals: Ronnjaé T. Gordon, Ronnie T. Gordon, Jr., and Jo Lynn Wilson.[36] But a plaintiff who is not a licensed attorney may not represent or appear on behalf of another person or entity in federal court proceedings. *See Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998); *Roundtree v. Connecticut*, 2022 WL 1063751, at *2 (D. Conn. 2022). Although it is not clear from Callahan's amended complaint whether these individuals are her children, it would not matter if they were because this limitation also applies to non-attorney parents who wish to bring a civil rights action on behalf of their child. *See Cheung v. Youth Orchestra Found., Inc.*, 906 F.2d 59, 61 (2d Cir. 1990); *McFarlane v. Roberta*, 891 F. Supp. 2d 275, 283–84 (D. Conn. 2012). Accordingly, I will dismiss any claims Callahan asserts on behalf of Gordon, Gordon, Jr., and Wilson.

*City of New Haven*

Callahan alleges that the City of New Haven "was deliberately indifferent to [her] constitutional rights."[37] A municipality, such as New Haven, is subject to suit under § 1983. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). But it may be liable only if the alleged police misconduct was caused by a municipal policy, practice, or custom, or if it was caused by a municipality's deliberate indifference and inaction in light of a history of prior similar constitutional deprivations by municipal officers. *See Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d Cir. 2018) (describing the scope and limitations of municipal liability under *Monell*).

---

[36] Doc. #6 at 1–2.
[37] *Id.* at 10–11.

Callahan alleges no facts to establish that there was a city policy, practice, or custom that caused the purported unconstitutional misconduct she describes in her amended complaint. Nor does she allege facts to show that New Haven has been deliberately indifferent to the type of constitutional violations she alleges here.[38] In her opposition to the defendants' motion to dismiss, she argues that her pleading provides "ample notice about what violative conduct occurs" in New Haven and that it adequately explains New Haven's role in the "unlawful policing practices" of its police department.[39] But her amended complaint does no such thing, and "[a]bsent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). Accordingly, Callahan has failed to plead a plausible § 1983 claim against New Haven.

### *New Haven Police Department and New Haven Police Task Force*

Callahan has also sued the New Haven Police Department and a task force comprised of officers from the department.[40] But neither the police department nor its task force is a "person" subject to suit for purported violations of the Constitution under § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Holliday v. Newington Police Dep't*, 2020 WL 509696, at *6 (D. Conn. 2020) (explaining that "a municipal police department is not subject to suit under section 1983"); *Belton v. Wydra*, 2019 WL 2162718, at *4 (D. Conn. 2019) (dismissing civil rights claims against the Hamden Police Department and its SWAT Unit). Accordingly, I shall dismiss Callahan's claims against both defendants.

---

[38] *See id.* at 10–11, 13–14.
[39] *See* Doc. #25 at 2.
[40] Doc. #6 at 1, 10–11, 14–15.

### *Chief Campbell, Lieutenant Cain, Captain Johnson, and Special Agent Gordon*

Callahan's amended complaint names three supervisory police officers—Chief Campbell, Lieutenant Cain, and Captain Johnson—as well as FBI Special Agent Gordon as defendants.[41] The Second Circuit has ruled that "there is no special rule for supervisory liability" and that "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotations omitted). At the pleading stage, a plaintiff must plausibly allege each defendant's "personal involvement in the alleged constitutional deprivation" to establish his or her liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).

Callahan has not done so with respect to these four defendants. Her amended complaint contains no allegations that any of these individual defendants were personally involved with either her false arrest in 2016 or the search of her home in 2018. Indeed, she does not claim that any of these individual officers were responsible for the purported unlawful conduct about which she complains.

First, Callahan states that "[Chief] Campbell was notified" of her false arrest and that he failed to supervise his officers.[42] Those allegations are conclusory and clearly insufficient to assert a civil rights claim against him. *See Pierce v. Town of Simsbury*, 2022 WL 4291389, at *5 (D. Conn. 2022) (dismissing claim against police chief because the plaintiffs failed to allege that he "was present at the scene of the incident, prepared a report related to the incident, had a reasonable opportunity to intervene, or had any other interaction with [the plaintiffs]").

---

[41] *Id.* at 1.
[42] *See id.* at 5–6 (¶ 39), 11, 13.

8

Second, Callahan alleges that Lieutenant Cain "disregarded [a] complaint" that Callahan filed with the Internal Affairs Department of the New Haven Police Department.[43] This allegation—the only one against Lieutenant Cain—is similarly insufficient to state a claim under § 1983. Even assuming that Lieutenant Cain ignored Callahan's complaint, this does not establish that Lieutenant Cain took part in any of the alleged unlawful police action in 2016 and 2018.

Finally, Callahan's pleading contains no substantive allegations against either Captain Johnson or Special Agent Gordon. She only briefly refers to Captain Johnson in the body of the amended complaint, and she fails even to mention Special Agent Gordon, other than in the case caption.[44] Accordingly, I will dismiss Callahan's claims against Chief Campbell, Lieutenant Cain, Captain Johnson, and Special Agent Gordon.

### *Officer Eisenhard*

Callahan primarily complains that Officer Eisenhard's arrest warrant affidavit contained the false accusation that she called McCrea a "fat Miss Piggy"—something Callahan adamantly maintains she never said.[45] I will liberally construe her complaint as also raising a malicious prosecution claim based on this arrest.[46] Both of these claims suffer from several fatal deficiencies.

"To state a valid claim for false arrest or malicious prosecution under § 1983, a plaintiff must plead an unreasonable deprivation of liberty in violation of the Fourth Amendment and satisfy the state law elements of the underlying claims." *Walker v. Sankhi*, 494 F. App'x 140,

---

[43] *Id.* at 5 (¶ 32), 11.
[44] *See id.* at 11.
[45] *See id.* at 4 (¶ 18), 5 (¶¶ 33–34, 37), 6 (¶¶ 40, 48). At oral argument, Callahan conceded that Officer Eisenhard did not participate in the February 2018 search of her home.
[46] *See id.* at 4 (¶ 13).

9

142 (2d Cir. 2012) (citing *Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 2010), and *Jaegly v. Couch*, 439 F.3d 149, 151–52 (2d Cir. 2006)). As the Second Circuit has made clear, "[p]robable cause is a complete defense to a constitutional claim of false arrest," and "continuing probable cause is a complete defense to a constitutional claim of malicious prosecution." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014).

Callahan has not plausibly alleged facts to show that Officer Eisenhard did not have probable cause to arrest her. Although she claims that she was wrongly accused of calling McCrea a "fat Miss Piggy," she does not allege that Officer Eisenhard fabricated this remark, as distinct from relying on an accusation by McCrea that Callahan had made this remark.[47] Callahan conceded at oral argument that she could say whether it was Officer Eisenhard or McCrea that lied. And therein lies the rub, because if Officer Eisenhard relied in good faith on McCrea's statement, then he did not lack probable cause to arrest Callahan. "When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001).

"The probable cause inquiry is an objective inquiry, and when the police are confronted with conflicting witness accounts about what happened, courts do not second-guess a police officer's decision to credit one witness's account over another in the absence of facts to show why no objectively reasonable officer could have resolved the conflicting accounts as the police did." *Mayo v. City of New Britain*, 2021 WL 681146, at *6 (D. Conn. 2021). Because Callahan

---

[47] The affidavit makes clear that McCrea reported the "piggy" comment to Officer Eisenhard. *See* Exs. at 37 to Mem. in Opp'n to Mot. for Summ. J., *Callahan v. Hum Res., et al.*, No. 3:18-cv-488, Doc. #56-4. He quoted McCrea in his affidavit, and she said that Callahan told her to "get [her] fucking piggy ass out of the way," not that Callahan called her a "fat Miss Piggy." *Ibid.* (¶ 3). The exact wording of the "piggy" remark makes no difference to my analysis.

has not alleged facts to show that Officer Eisenhard fabricated the "piggy" statement by McCrea or that he had reason to believe it was false, Callahan has not plausibly alleged facts to suggest that Officer Eisenhard lacked probable cause as required to support Callahan's claims for false arrest and malicious prosecution.

Moreover, both Officer Eisenhard's affidavit and the charging document demonstrate that it did not matter what Callahan *specifically* said to McCrea on March 21, 2016. McCrea had "a[n] active temporary protective order [between her and Callahan that contained] a strict no contact rule."[48] Officer Eisenhard predicated his arrest warrant on Callahan breaching that protective order by having communication with McCrea in violation of a Connecticut criminal statute, *see* Conn. Gen. Stat. § 53a-223c.[49] Even if Callahan had exchanged benign pleasantries with McCrea, such as "It's nice to see you" or "I hope you have a lovely day," she would have made contact with McCrea, violated the temporary protective order, and Officer Eisenhard would have had probable cause for her arrest.

And Callahan does not claim to have had no contact with McCrea; in fact, she makes explicit reference in her amended complaint to a "neighborhood dispute" involving McCrea that precipitated her arrest.[50] Even if one completely removed the piggy comment from Officer Eisenhard's affidavit, there would still have been probable cause for Callahan's arrest because the affidavit describes how Callahan "was yelling and screaming" at McCrea—a violation of the protective order's no-contact provision and § 53a-223c. *See Moulthrop v. Slavin*, 700 F. App'x 75, 78 (2d Cir. 2017) (concluding that "[a] corrected affidavit would have supported a finding of

---

[48] *Ibid.* (¶ 4).
[49] *Ibid.* (¶ 6).
[50] *See* Doc. #6 at 4 (¶ 19).

probable cause" and affirming the district court's dismissal of the plaintiff's false arrest and malicious prosecution claims).[51]

Finally, claims for false arrest and malicious prosecution require a plaintiff to prove that there was a favorable termination of the proceedings against her. *See Spak v. Phillips*, 857 F.3d 458, 461 n.1 (2d Cir. 2017); *Miles v. City of Hartford*, 445 F. App'x 379, 382–83 (2d Cir. 2011); *Miller v. Stallworth*, 2018 WL 3974730, at *4 (D. Conn. 2018). A "favorable termination" means that a plaintiff must show that her "prosecution ended without a conviction." *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022).

But Callahan has not alleged a favorable termination. At oral argument, she could not say what was the outcome of her arrest. In her amended complaint, she pleads that certain felony charges against her were dismissed, but she does not identify the charge stemming from the March 2016 incident as one of those dismissed charges.[52] Nor does she plausibly plead anywhere in the amended complaint that her purported false arrest and prosecution were eventually resolved in her favor. Even under a liberal construction of her pleading, that necessary element is missing. *See Miles*, 445 F. App'x at 383 (citing *Roesch v. Otarola*, 980 F.2d 850, 952 (2d Cir. 1992)).

Callahan has not alleged facts to plausibly show that Officer Eisenhard lacked probable cause or that there was a favorable termination of the proceedings against her. Accordingly, I will dismiss her claims for false arrest and malicious prosecution against Officer Eisenhard.

---

[51] *See* Exs. at 37 (¶ 3) to Mem. in Opp'n to Mot. for Summ. J., *Callahan v. Hum Res., et al.*, No. 3:18-cv-488, Doc. #56-4; *see also id.* at 60. The protective order was issued pursuant to Conn. Gen. Stat. § 46b-16a ("Issuance of civil protection order on behalf of person who has been victim of sexual abuse, sexual assault or stalking"). *Id.* at 60. According to the Long Form Information, Callahan violated that order of protection and Conn. Gen. Stat. § 53a-223c by engaging "in verbal contact with Janay McCrea." *Ibid.*
[52] *See* Doc. #6 at 7 (¶¶ 58–62), 14.

12

*Statute of limitations*

The defendants argue that Callahan's claims are barred by the statute of limitations.[53] A three-year statute of limitations applies to federal civil rights claims that are brought in Connecticut under 42 U.S.C. § 1983. *See Walker v. Jastremski*, 430 F.3d 560, 562 (2d Cir. 2005). Here, Callahan filed this action in August 2021—more than three years after her alleged unlawful arrest in March 2016 and after the alleged unlawful entry and search of her home in February 2018.

A statute of limitations may be subject to equitable tolling, but only in "rare and exceptional circumstances," where there are "extraordinary circumstances [that] prevented a party from timely performing a required act," and only if "the party acted with reasonable diligence throughout the period he sought to toll." *Id.* at 564. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Smalls v. Collins*, 10 F.4th 117, 145 (2d Cir. 2021).

Callahan has not alleged any non-conclusory facts to suggest that the limitations period should be subject to equitable tolling. Indeed, her lengthy record of litigation as recounted in the first footnote of this ruling weighs strongly against any conclusion that she has been impaired in her ability to timely seek relief from the courts.

With respect to Callahan's claim of false arrest in March 2016, the statute of limitations began to run as of the date that Callahan was arrested. *See Nowacki v. Town of New Canaan*, 2017 WL 1158239, at *7 (D. Conn. 2017). Accordingly, because far more than three years have

---

[53] *See* Doc. #22 at 6–7, 9–12.

13

elapsed between her arrest and the filing of this complaint, I will grant the defendants' motion to dismiss on statute-of-limitations grounds as to Callahan's claim for false arrest in March 2016.

By contrast, the statute of limitations for Callahan's malicious prosecution claim began to run on the date that there was a favorable termination of charges against her. *See Spak*, 857 F.3d at 462. The complaint fails to allege any particulars about a favorable termination or the date when it occurred. Accordingly, I decline at this time to conclude that Callahan's malicious prosecution claim is time-barred by the statute of limitations.

It would also be premature to conclude that the statute of limitations bars Callahan's claims arising from the police entry and search of her home in February 2018. Although the three-year limitations period following this incident would normally have elapsed in February 2021, the parties have not addressed whether an intervening executive order by Governor Lamont during the COVID-19 pandemic was effective to toll the limitations period from March 2020 to March 2021. *See Santana v. Quiros*, 2022 WL 16706959, at *6 (D. Conn. 2022); *Connelly v. Komm*, 2021 WL 5359738, at *3–5 (D. Conn. 2021). Accordingly, I decline at this time to conclude that Callahan's claim stemming from the police entry and search of her home is time-barred by the statute of limitations.

### *State law claims*

Callahan also asserts several state law claims throughout her amended complaint.[54] But in the absence of a claim over which there is federal question jurisdiction, I decline to exercise supplemental jurisdiction over them. *See* 28 U.S.C. § 1367(c)(3); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 117–18 (2d Cir. 2013).

---

[54] *See* Doc. #6 at 2, 11, 14.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the defendants' motion to dismiss (Doc. #22). The Clerk of Court shall close this case.

The Court's order of dismissal is with prejudice as to Callahan's claims against the New Haven Police Department and the New Haven Police Task Force. Any amended claim against these two entities would be futile because they are not subject to suit.

The Court's order of dismissal is also with prejudice as to Callahan's claims for false arrest and malicious prosecution arising from the events of March 2016. It is clear that Callahan cannot show that Officer Eisenhard lacked probable cause as necessary to support either a claim for false arrest or malicious prosecution, and it is also clear that the false arrest claim is barred by the statute of limitations.

As to the remaining defendants and any claim concerning the entry and search of her home in February 2018, Callahan may file a motion to re-open this case along with a proposed amended complaint by **March 13, 2023,** if she has good faith grounds to file an amended complaint with allegations that are sufficient to redress the concerns stated in this ruling. Because Callahan's complaint in this action concerns solely allegations of police-related misconduct and not allegations regarding employment discrimination (which Callahan has alleged in other actions), any amended complaint in this action must relate to alleged police misconduct.

It is so ordered.

Dated at New Haven this 14th day of February 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge